[Crim. No. 2816.   Third Dist.   Apr. 7, 1958.]

THE PEOPLE, Respondent, v. CHARLES FRED BRASHER et al., Defendants; RAYMOND OWEN EDWARDS, Appellant.

Patrick R. Murphy, under appointment by the District Court of Appeal, for Appellant.

No appearance for Respondent.

SCHOTTKY, J.—Charles Fred Brasher and Raymond Owen Edwards were found guilty by a jury of the crime of burglary in the second degree. Judgment was entered on the verdict and Edwards has appealed from the judgment.

At appellant's request this court appointed Patrick R. Murphy, a member of the Sacramento Bar, to represent appellant upon this appeal. Mr. Murphy has informed this court by letter that after a careful review of the record he has reached the conclusion there is no meritorious ground of appeal and that he will file no brief. He also has informed us that he visited appellant, Edwards, and explained his views to appellant and that appellant has stated to him that he agrees that there is no legal merit to the appeal and that he (appellant) will file no brief in support of his appeal.

We have, however, examined the record and will briefly summarize the evidence. Two law enforcement officers located

a 1951 Chevrolet station wagon parked in the rear of Azevedo's Market in the city of Patterson about 2:30 a. m. of June 24, 1957. No one was in the vehicle, but one officer who inspected the vehicle saw ropes, a tool box, and a dolly in it. The officers then proceeded to check the building. One of them found a door with some fresh pry marks near the lock area. By the door were two metal bars which were described as wrecking bars. One of the officers grasped the door knob in order to enter the building, and a knife which had been lodged in the inside of the door fell to the floor and the door was opened. Two other knives were found outside the door. The officers entered the market and found appellant and Charles Brasher standing near the corner of a walk-in ice box with their gloved hands in the air. Appellant, in response to a question, said that he found the door open and walked in. The meat storage compartment was found open and meat was lying on the floor. A sledge and a hatchet were found underneath a sink in the locker room. A safe which was located in the market was found to have been opened. The door was closed when the safe was observed but the handle was not in the locked position. The inner door of the safe appeared to have been sprung by prying—there were pry marks in the left hand upper corner of the safe. The cash register had also been tampered with.

Mrs. Azevedo testified that she had closed the market about 6 p. m. the previous evening. She locked the storerooms, back door and the front door. The back door was locked by wedging three knives in it. She removed the day's receipts from the cash register and placed them in the safe and locked both the inside and outside of the safe. No meat was on the floor of the walk-in box when she locked up the store. She had never seen the tools which were found beneath the sink.

Brasher, Edwards' accomplice, testified that he and Edwards had left San Francisco in Edwards' Chevrolet station wagon about 8:45 p. m. on June 23, 1957. While driving, Edwards said he knew "where we could make some easy money." He later pointed out the market and said the money should be in there. Later they drove behind the market where Edwards got out to go to a restroom, and after five or ten minutes he called Brasher over to the restroom and they then entered the store. Brasher testified that the door was open when they entered. After they were in the store a few minutes Brasher saw the police who entered shortly therafter.

Edwards claimed that he entered the store, which he

thought was a motel office, to obtain a room for the night. (There were some cabins in the rear which could be rented.) He denied any intent to commit any crime.

It is clear that the jury could infer that an entry had been made in the market for the purpose of committing a larceny, even without the testimony of the accomplice. Edwards was found inside a market after closing hours. There was evidence that a door had been forced to gain access. The safe was not locked and there were indications that someone had attempted to pry open the inner door. Meat was found on the floor of the meat locker, indicating that someone had moved it. The intent to commit a theft could reasonably be inferred from the fact that the meat had been moved from its place of storage. (*People* v. *Fitch,* 73 Cal.App.2d 825 [167 P.2d 211].) Indeed, it could be inferred from the evidence of unlawful and forcible entry alone.

We are satisfied that the appellant received a fair trial, that the jury was fully and correctly instructed, and that the evidence supports the judgment.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.